**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>vs.  )<br>  )  No. 2:11-cr-00474-DCN<br>HARVEY COX,  )<br>  )  **ORDER**<br>        Defendant.  )<br>_____) | |

This matter is before the court on defendant Harvey Cox's ("Cox") motion for compassionate release, ECF No. 104.  For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

In early 2011, while the Florence County Sheriff's Office was investigating Cox regarding the sexual assault of a minor, Cox staged his own death.  He created the appearance that he had died while fishing off the South Carolina coast—prompting the United State Coast Guard to conduct a ten-hour search—when in fact he had fled to Florida.  After Cox's daughter, A.C., reported the ruse to authorities, the U.S. Marshals Service arrested Cox in Florida and returned him to South Carolina.

During the ensuing investigation, A.C. turned over to authorities forty-six Polaroid photographs of a naked young girl, whom A.C. identified as Cox's niece, M.G.  A.C. informed investigators that she discovered the photographs in Cox's bedroom and in his truck.  A.C. informed investigators that Cox had sexually abused her when she was between the ages of ten and thirteen.  The dates on the back of the photographs, which were in Cox's handwriting, indicated the Polaroids had been taken around the time A.C. alleges Cox stopped abusing her.  According to A.C., Cox would demand that A.C. bring

1

M.G. with her when A.C. came to stay with him and would require the girls to sleep in his bed.

Investigators interviewed M.G., who confirmed A.C.'s account. M.G. confirmed that she was the girl in the photographs and stated that Cox took them beginning when she was twelve years old. According to the presentence report ("PSR"),

> [M.G.] stated that Cox would give them (her and [A.C.]) Crown Royal liquor and he would "put stuff in their drinks to make them feel better." She admitted they had sexual intercourse, and he would masturbate and ejaculate on her stomach after taking the pictures. Cox also gave [M.G.] money and threatened to "do it" to her little sister if she told anyone.

ECF No. 89, PSR ¶ 13.

On August 10, 2011, a federal grand jury charged Cox with three counts in a superseding indictment. ECF No. 35. Count 1 charged that Cox "knowingly and willfully caused the Coast Guard to attempt to save a life and property when no help was needed," in violation of 14 U.S.C. § 88(c). Id. at 1. Count 2 charged that Cox "knowingly did use, persuade, induce, and coerce a person under the age of eighteen . . . to engage in sexually explicit conduct . . . for the purpose of producing visual depictions of such conduct," in violation of 18 U.S.C. § 2251(a) and (b). Id. at 2. Finally, Count 3 charged that Cox "did knowingly possess material that contained images of child pornography," in violation of 18 U.S.C. § 2252A(a)(5)(b). Id.

While Cox was detained on these charges, his cellmate turned over to authorities a set of letters that Cox was writing to A.C. In one letter, Cox instructed A.C. to testify at trial that she and M.G. took the photographs themselves without Cox's knowledge. In another letter, Cox stated that M.G.'s uncle took the photographs and urged A.C. and M.G. not to testify.

On March 19, 2012, Cox pleaded guilty to Counts 1 and 3 of the superseding indictment pursuant to a plea agreement. The United States Probation Office ("USPO") subsequently prepared the PSR. In calculating the sentence range under the United States Sentencing Guidelines (the "U.S.S.G." or "Guidelines") for possession of material depicting sexual exploitation of a minor, the USPO applied a cross-reference in U.S.S.G. § 2G2.2(c)(1), which is triggered "[i]f the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." Cox objected to application of the cross-reference, and the court overruled the objection. The court ultimately sentenced Cox to 60 months of imprisonment on Count 1 and 240 months on Count 3, to be served concurrently. ECF No. 91.

Cox appealed his sentence to the United States Court of Appeals for the Fourth Circuit, arguing that the court improperly applied the U.S.S.G. § 2G2.2(c)(1) cross-reference. ECF No. 94. On March 5, 2014, the Fourth Circuit affirmed Cox's sentence, holding that the court's application of the cross-reference was proper. ECF No. 102 at 10; United States v. Cox, 744 F.3d 305, 309 (4th Cir. 2014).

On January 27, 2021, Cox, proceeding pro se, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 104. On June 17, 2021, Cox, through court-appointed counsel, supplemented his motion. ECF No. 111. On July 15, 2021, the United States of America (the "government") responded in opposition. ECF No. 112. Cox, proceeding pro se, filed a reply on August 2, 2021, ECF No. 114, and on October 8, 2021, Cox, through counsel, filed a supplement to the reply, ECF No. 117. As such, the motion has been fully briefed and is ripe for review.

## II. STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. Courts refer to requests for sentence reductions under this section as motions for "compassionate release."[1] United States v. Ferguson, 55 F.4th 262, 267–68 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022). Prior to the First Step Act of 2018, Pub. L. No 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate release. United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies.[2] Id. at 276.

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. Hargrove, 30 F.4th at 195. The Fourth Circuit has said that district courts are empowered to "consider any extraordinary and compelling reason for release that defendant might raise." McCoy, 981 F.3d at 284 (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original). If the court finds that such circumstances warrant a reduction in a

---

[1] The term "compassionate release" is a misnomer since the court may decide to reduce the defendant's custodial sentence instead of eliminating it.

[2] The government does not dispute that Cox exhausted his administrative remedies. ECF No. 112 at 8 ("On December 18, 2020, [Cox] applied to the warden for request for compassionate release and sentence reduction. The Request was denied . . . on January 6, 2021."). The court similarly finds that this requirement is met.

4

defendant's sentence, it must "consider[] the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020); see also Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 57–58 (2005) ("Absent some reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief.").  Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high."  McCoy, 981 F.3d at 288.

### III.   DISCUSSION

The court first considers Cox's argument that extraordinary and compelling circumstances warrant his compassionate release.  The court then proceeds to address the factors set forth under 18 U.S.C. § 3553(a), finding that they do not justify a reduction in Cox's sentence.

**A.  Extraordinary and Compelling Circumstances**

**1.  Health Risks**

Cox moves for an order granting compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that the COVID-19 pandemic has put his health in serious risk while in prison.  The court finds, despite the high bar for a motion premised on COVID-19, that Cox's underlying health conditions put him at such an elevated risk that he has demonstrated extraordinary and compelling reasons for compassionate release.

"In the context of [COVID-19], courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citations omitted). "When assessing compassionate release motions during the pandemic, the Court examines the Centers for Disease Control's ("CDC") list of risk factors for severe COVID-19 complications." Wilson v. United States, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020). At the time of this order, Cox is seventy years old. His body mass index is 29.6, and he suffers from essential hypertension and bronchitis, among other conditions. ECF No. 112-5 at 90. He takes medication to manage his high cholesterol and high blood pressure. ECF No. 111-2. The CDC states that "[o]lder adults are at the highest risk of getting very sick from COIVD-19," with more than eighty-one percent of COVID-19 deaths occurring in people over the age of sixty-five. CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed May 9, 2023). Additionally, individuals who are overweight, have heart conditions such as high blood pressure, and have chronic lung diseases are at a higher risk developing complications from COVID-19. Id.

"Courts in this district and elsewhere have found, particularly at the height of the pandemic, that the COVID-19 pandemic may constitute an extraordinary and compelling reason [] in conjunction with specific risk factors such as age or medical condition." United States v. Cunningham, 2021 WL 2411134, at *2 (D.S.C. June 14, 2021). However, in light of the COVID-19 vaccine, "courts have recognized the difficulty in

proving extraordinary and compelling reasons even when an inmate has a high-risk comorbidity." See United States v. Eppard, 2022 WL 1785274 at *3 (W.D. Va. June 1, 2022). "[F]ollowing [the availability of] full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." Id. (citing United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021)). For most prisoners, the availability and effectiveness of vaccines make it "impossible" to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." United States v. Brown, 2022 WL 1664474 at *2 (D. Md. May 25, 2022) (quoting United States v. Collins, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021)).

      In his original motion for compassionate release, Cox noted the prevalence of COVID-19 cases at Federal Correctional Institution, Fort Dix ("FCI Fort Dix"), where Cox is incarcerated. Those incidences have greatly subsided since then, as FCI Fort Dix now reports zero cases among inmates and staff. BOP, BOP COVID-19 Statistics, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed May 16, 2023). "In the absence of evidence suggesting a particular risk of infection at the facility where a defendant is housed, the overall reduction in cases may indicate that the COVID-19 pandemic no longer constitutes an exceptional and compelling reason for compassionate release even in conjunction with underlying medical conditions." United States v. Raap, 2021 WL 2328048, at *2 (D.S.C. June 8, 2021); see United States v. Wolfe, 2021 WL 2291894, at *2 (D.S.C. June 4, 2021); United States v. Moses, 2021 WL 2117159, at *2 (D.S.C. May 25, 2021). Further, "persuasive authority suggests that proving a

7

particularized susceptibility to a severe case of COVID-19 in a post-vaccination world requires significantly more than it did in a pre-vaccination world." United States v. Moore, 2022 WL 453536, at *5 (S.D. W. Va. Feb. 14, 2022) (collecting cases).

As such, the availability of the vaccine has been found by other courts in the Fourth Circuit to "dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." United States v. Sanders, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (collecting cases). Cox has received two doses of the Pfizer vaccine. ECF No. 112-5 at 226. The vaccine has proven effective in reducing the risk of contracting COVID-19 and the risk of serious consequences if it should be contracted, and Cox's willingness to get vaccinated mitigates his risk of developing the most serious illnesses.

Even so, the Fourth Circuit has declined to adopt a "per se rule that would always preclude a finding of extraordinary and compelling reasons when the movant has been vaccinated," and the court declines to adopt such a rule here. United States v. Petway, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (unpublished). While he is vaccinated, Cox still faces relatively greater risk than the general population because of his three comorbidities.[3] For that reason, the court concludes that Cox has demonstrated that his circumstances are extraordinary and compelling.

---

[3] As one study has shown, COVID-19 vaccines are highly effective against COVID-19-associated hospitalization and death, especially in persons with comorbidities, but those with multiple comorbidities remain at heightened risk. See Christina Yek et. al., Risk Factors for Severe COVID-19 outcomes Among Persons Aged ≥ 18 Years Who Completed a Primary COVID-19 Vaccination Series—465 Health Care Facilities, United States, Dec. 2020–Oct. 2021, 71(1) Morbidity and Mortality Weekly Report 19–25 (Jan. 7, 2022). That study tracked the outcomes for 1,228,664 persons who completed primary vaccination. Id. Of those tracked, 189 had a severe outcome and 36 persons who died. Id. All persons with severe outcomes had at least one risk factor and

## 2. Allegedly False Statements

Before advancing to determine whether the sentencing factors weigh in favor of relief, the court briefly considers Cox's arguments raised in his pro se reply.[4]  In that reply, Cox argues for the first time that the statement of facts in the government's response brief and in the PSR "are not supported by any evidence and are fraudulent." ECF No. 114 at 2.  The court similarly relied on the PSR in formulating its recitation of the factual background in this order.  Most notably, Cox denies that he sexually abused A.C. and M.G. and claims, without basis, that if the allegations were true, "the United States Attorney would not have offered a [p]lea [a]greement to Defendant."  Id.  He further claims that A.C. and her mother "set up" Cox so that they could take control of his property upon his conviction.  Id. at 4.

To the extent that Cox is now claiming that the use of supposedly false facts in the PSR constitutes additional grounds for compassionate release, the court declines to consider the argument for several reasons.  First, Cox has not administratively exhausted the claim.  To satisfy the exhaustion requirement, there should be "a reasonable degree of overlap" between the motion and the request to the warden, such that the BOP has "a fair opportunity" to consider the grounds for the motion.  United States v. Knight, 2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020).  "Allowing an inmate to present the [c]ourt with an entirely new basis for a sentence reduction" denies the BOP of said opportunity

---

28 of those who died (or 77.8%) had four or more risk factors.  Id.  As such, the court finds that even with the COVID-19 vaccine—which clearly lowers Cox's risk for the disease—he may still be at risk for a severe case of COVID-19 because of his three comorbidities.

[4] Notably, none of Cox's arguments about the alleged falsehoods were raised in his counsel's reply brief.

and "undermines the [] statutory exhaustion requirement." Id. (collecting cases); see, e.g., United States v. Mogavero, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden [as to the court]."). Here, Cox's request to the warden only argued that his medical conditions constituted a compelling circumstance. ECF No. 112-3 at 2–3. Therefore, failure to exhaust administrative remedies precludes the court's consideration of Cox's claim about false facts.

Second, and more importantly, Cox is well past the point of arguing that the facts contained in the PSR are incorrect. As noted in the procedural background, Cox previously filed sentencing memoranda arguing that the court should not consider any evidence of Cox's alleged sexual exploitation—regardless of whether true—since he had only pleaded guilty to possession of child pornography. See also ECF No. 86 at 2 (arguing that the allegations about the "alleged conduct" between Cox and A.C. and M.G. were not relevant to his charged offenses). Certainly, the argument that the court ought not consider the evidence at all differs somewhat from Cox's current argument that the evidence is unequivocally false. But after rejecting his argument at sentencing, the court proceeded to consider the evidence in the PSR as true. On appeal, the Fourth Circuit affirmed, holding that this court properly "referred to paragraphs 11, 12, and 13 of the PSR" to support its finding that the cross-reference's "purpose" requirement was satisfied. Cox, 744 F.3d at 309. The Fourth Circuit similarly relied on the evidence presented in the PSR to "corroborate[]" that Cox's purpose was to produce a visual depiction of the sexually explicit conduct. Id. Not only is Cox's argument untimely, then, but the contention that the evidence is false has been impliedly rejected by both this

court and the Fourth Circuit and reflects Cox's ongoing lack of acceptance of responsibility.

Third, to the extent the court did not previously confront the issue—and if it were to set the exhaustion issue aside—Cox's argument still fails. As he acknowledges, a defendant bears the burden at sentencing of showing that information in the PSR is inaccurate. ECF No. 114 at 3; see also United States v. Smith, 827 F. App'x 262, 266 (4th Cir. 2020). "[A]bsent such a showing, the court may adopt the PSR's facts without conducting more specific inquiry." Smith, 827 F. App'x at 266. The court finds that Cox's mere averments that his daughter, S.C., will corroborate his account do not satisfy the burden. Thus, the court declines to consider the supposedly "false allegations of child abuse" discussed in Cox's reply brief. ECF No. 114 at 4 (cleaned up). The court proceeds solely under the basis that Cox has demonstrated health conditions that warrant consideration of the sentencing factors.

### B. Section 3553(a) Factors

Even though Cox has presented extraordinary and compelling circumstances based on his medical conditions, the factors set forth in 18 U.S.C. § 3553(a) weigh against his release or a reduction in his sentence. In sentencing a defendant or determining whether a reduction is justified, § 3553(a) requires a court "impose a sentence sufficient, but not greater than necessary" by considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and

>              (D) to provide the defendant with needed educational or vocational
>              training, medical care, or other correctional treatment in the most
>              effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
> [. . .]
> (5) any pertinent policy statement;
> [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court finds that the § 3553(a) factors weigh against reducing Cox's sentence. The nature and circumstances of his offenses were serious. Cox's conviction included one count for possession of child pornography, which again, was found to be properly enhanced by a cross-reference for causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The facts underlying the cross-reference application confirm that release is not warranted given the nature and circumstances of the offense, as well as the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public from further crimes. Other courts have held that the seriousness of a case involving child pornography precludes relief even where other extraordinary and compelling factors may weigh in the defendant's favor  For example, in an unpublished opinion, the Third Circuit affirmed the denial of a motion for compassionate release filed by a defendant who was convicted for extorting several underage girls—including his stepdaughter—for explicit images. United States v. Freed, 845 F. App'x 198 (3rd Cir. 2021). Under the recidivism factor, the court agreed that since the defendant had committed his offenses from his car and home, he could commit similar crimes "without ever walking out the

12

front door." Id. at 201.  The court's observation in Freed is similarly applicable here, as the PSR indicates that Cox committed all his crimes from his bedroom and room at his business, as reflected in the Polaroid photographs.[5]  PSR ¶ 11.  District courts across the country have reached similar conclusions as well.  See, e.g., United States v. Galyen, 2020 WL 4747727, at *6 (S.D. Cal. Aug. 17, 2020) (collecting cases from across the country in which district courts concluded compassionate release would not be appropriate in cases involving production of child pornography and/or sexual abuse of minors).

For those reasons, the court places little weight in Cox's age, as well as his contention that his participation in employment and education courses and his minimal disciplinary history while in prison shows he poses little danger to the community.  See ECF No. 111 at 3; ECF No. 117 at 3.  Those efforts do not overcome the factors weighing against reducing his imprisonment term.  See United States v. Blair, 2021 WL 2375872, at *2 (D. Colo. June 10, 2021) (rejecting the argument that the defendant's "age indicates he will not recidivate" because the defendant engaged in the child-pornography offense when he was nearly sixty years old).[6]  Based on the sentencing factors, the court does not find that Cox's health concerns, however salient, override the risks described in the § 3553(a) sentencing objectives.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.

---

[5] Cox's unsubstantiated claim—that A.C. and her mother are out to "set [him] up"—further suggests that Cox's sentence may be necessary to protect members of the public from further crimes.  ECF No. 114 at 4.

[6] Cox was fifty-three when he engaged in the conduct that resulted in his conviction.

**AND IT IS SO ORDERED.**

                                              **DAVID C. NORTON**
                                              **UNITED STATES DISTRICT JUDGE**

**May 17, 2023**
**Charleston, South Carolina**